**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

PAUL R. WALLACE
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted: May 20, 2020
Date Decided: June 25, 2020

John G. Harris, Esquire
Richard I.G. Jones, Jr., Esquire
Peter C. McGivney, Esquire
Berger Harris LLP
1105 N. Market, 11th Floor
Wilmington, Delaware 19801

Douglas D. Herrmann, Esquire
Michael S. Hino, Esquire
Alexander L. Harris, Esquire
Pepper Hamilton LLP
1313 Market Street, Suite 5100
Wilmington, Delaware 19801

RE: *Work Capital, LLC v. AlphaOne Capital Partners, LLC*
Civil Action No. N19C-08-036 PRW CCLD[1]

Dear Counsel:

This Letter Opinion addresses the Defendant's pending Motion to Dismiss

Count IV of the Amended Complaint (D.I. 17). For the reasons set forth briefly

below, that Motion is **DENIED.**

---

[1] Because the Plaintiff's Amended Complaint added a claim under 11 *Del. C.* §§ 931-941 seeking statutory remedies including equitable relief in the form of a temporary injunction that are in the exclusive jurisdiction of the Court of Chancery, the undersigned has been cross-designated to sit in this case as a temporary Vice Chancellor concurrently with his service as a Judge in the Complex Commercial Litigation Division of the Superior Court (D.I. 15). *See* Del. Const. Art. IV, § 13(2).

## FACTUAL BACKGROUND[2]

Plaintiff Work Capital, LLC ("Work Capital") provides specialized asset management and related consulting services to investors interested in maximizing financial, environmental, and social returns.[3] In May 2017, Work Capital entered into a Service Level Agreement ("SLA") with AlphaOne Capital Partners, LLC ("AlphaOne").[4] Under the SLA, AlphaOne agreed to provide back-office, finance, legal, compliance, reporting, sales and marketing services, and support to Work Capital.[5] The SLA required that AlphaOne perform these services "in a manner and scope that meets or exceeds industry standards and complies with all legal and regulatory requirements."[6]

### A. ALPHAONE'S ALLEGED BREACHES OF THE SLA

Count I of the Amended Complaint alleges that AlphaOne breached the SLA in several material ways, including violations of: (a) the SLA's non-compete

---

[2] Unless otherwise noted, the facts recited herein are drawn from the well-pled allegations of the Amended Complaint, together with its attached exhibits.

[3] Am. Compl. ¶ 2.

[4] *Id.* ¶ 10.

[5] *Id.* ¶ 11.

[6] Am. Compl. Ex. A ("SLA"), Ex. B § 6.

provision, (b) the SLA's confidentiality provision, and (c) the SLA's termination provision.[7] AlphaOne also allegedly breached the SLA by failing to provide the services it committed to render under that agreement.[8] Moreover, Work Capital alleges that several of AlphaOne's breaches constitute "fraud," "gross negligence," "willful misconduct," and/or "material malfeasance" under Sections 3(b), 4(b), and 4(d) of the SLA, giving rise to special damages, potential forfeiture of AlphaOne's purported membership interests in Work Capital, and indemnification.[9] Specifically, Count II of the Amended Complaint asserts that Work Capital is entitled to indemnification from AlphaOne under Section 4(b) of the SLA for its multiple material breaches of the SLA and engagement in bad-faith, willful, and fraudulent misconduct to disrupt and undermine Work Capital's business operations.[10]

Work Capital first alleges AlphaOne breached the non-compete provision in Section 1(d) by competing against Work Capital and rendering services to

---

[7] Am. Compl. ¶ 26.

[8] *Id.*

[9] *Id.*

[10] *Id.* ¶ 50.

competitive entities formed and operated by former Work Capital co-manager Jason Britton ("Britton").[11] Pursuant to Section 1(d), AlphaOne is expressly prohibited from providing services "to any investment advisor or manager that, in direct competition with [Work Capital], services long-only, U.S. equity large capitalization ESG/SRI advisory accounts (specifically excluding any infrastructure or other fund or accounts with a non-exclusive ESG or SRI component)."[12] AlphaOne allegedly assisted Britton in competing with Work Capital by helping Britton establish a competing business entity, Reflection Asset Management ("Reflection"), providing the services AlphaOne was obligated to provide to Work Capital, and attempting to divert clients to Britton and Reflection.[13] Work Capital claims that AlphaOne's actions constitutes wrongful competition, intentional and willful misconduct, and a material malfeasance under the SLA.[14]

Next, Work Capital alleges AlphaOne breached Section 5 of the SLA. In Section 5(b) of the SLA, AlphaOne agreed to "use the same efforts it makes with

---

[11]  *Id.* ¶ 27.

[12]  SLA § 1(d).

[13]  Am. Compl. ¶¶ 27-29.

[14]  *Id.*

respect to its own confidential and proprietary information to protect confidentiality of all Confidential Information."[15] AlphaOne further committed to "hold all Confidential Information in confidence and restrict its disclosure to only such of its affiliates, directors, officers, employees, and agents as have a reasonable need to know such information."[16] AlphaOne allegedly breached Section 5 of the SLA by (a) providing Britton access to Work Capital's Confidential Information after his departure from Work Capital, (b) using Work Capital's Confidential Information to wrongfully compete with Work Capital, and (c) intentionally including Work Capital's Confidential Information in a complaint filed in the Court of Chancery seeking a judicial dissolution of Work Capital and not placing the filing under seal for the bad-faith purpose of harming Work Capital's business relationships and misappropriating those relationships for Britton and Reflection.[17]

---

[15] SLA § 5(b). Confidential information is defined as: "[A]ll confidential and proprietary information disclosed by either party to the other party, and any and all information and data which such party has received or receives as a result of this Agreement, including, without limitation, information relating to the other party's technology, know-how, products, potential products, services, potential services, markets, business information, or client information." *Id.* § 5(a).

[16] *Id.* § 5(b).

[17] Am. Compl. ¶ 32.

Finally, AlphaOne allegedly breached Section of 3(a) of the SLA by improperly and unilaterally purporting to terminate the SLA on July 12, 2019.[18] Section 3(a) of the SLA specifically prohibits AlphaOne from terminating the Agreement until the fifth anniversary of the SLA's effective date, May 9, 2022.[19] Still, under Section 3(b), "either party shall have the right to immediately terminate [the SLA] in the event of a material breach hereunder by the other party that is not remedied within 30 days following notice thereof by the non-breaching party."[20] Work Capital claims AlphaOne wrongfully and in bad faith engineered and communicated fraudulent grounds as a purported basis for its right to immediately terminate the SLA for cause.[21] In particular, Work Capital alleges AlphaOne engaged in the following "fraudulent maneuvers" that were "designed to harass and intimidate Work Capital's sole Managing Member and largest equity holder,

---

[18]    *Id.* ¶ 33.

[19]    SLA § 3(a).

[20]    SLA § 3(b).

[21]    Am. Compl. ¶ 33.

[Allyson McDonald], and coerce her to 'step aside' and allow AlphaOne to do business with Britton in direct competition with Work Capital"[22]:

- First, AlphaOne prepared and tried to have McDonald sign certain legal agreements that would have transferred all of her rights in Work Capital's intellectual property to Britton for use with his new business entity, which in turn (on information and belief) would benefit AlphaOne, Hondros and O'Hara and harm Work Capital.

- Second, when the attempted transfer of IP failed, on May 3, 2019, AlphaOne sent a fraudulently inflated invoice to Work Capital purporting to cover charges and fees from 2017 through the present (the "Fraudulent Invoice"), which charges and fees had never been contemplated or mentioned in any forecasts or documents prepared by AlphaOne, and refused to provide backup for such invoices despite requests from Work Capital;

- Third, when Work Capital justifiably refused to pay the Fraudulent Invoice, AlphaOne cut off access to all Work Capital computer systems, including Work Capital email. This denial of access is a further breach of the SLA[.]

- Fourth, AlphaOne used Work Capital's justified refusal to pay the Fraudulent Invoice as a pretext to withhold payments from Work Capital's clients, which payments pass through AlphaOne as part of the services AlphaOne was obligated to provide under the SLA, thus constituting a further breach of the SLA.[23]

---

[22] *Id.* ¶ 36.

[23] *Id.* ¶ 30.

### B. ALPHAONE'S ALLEGED COMPUTER RELATED OFFENSES AND IMPROPER "SELF HELP"

In addition to the contract claims in Counts I and II, Count IV of the Amended Complaint alleges AlphaOne violated the Delaware's Computer Related Offenses Act, 11 *Del. C.* §§ 931-941 (the "Act"). Sections 932-938 of the Act set forth the various computer crimes, including, as relevant here, "unauthorized access to a computer system" (Section 932), "theft of computer services" (Section 933), "interruption of computer services" (Section 934), and "misuse of computer system information" (Section 935).[24]

According to Work Capital, after AlphaOne generated the Fraudulent Invoice as the basis for its termination of the SLA, it resorted to "self help," including: (1) intentionally and knowingly exercising exclusive dominion and control over Work Capital's internet domain name, email accounts and other computer records; (2) attempting to convert Work Capital's bank accounts to its own use; (3) withholding confidential and valuable financial information from Work Capital; and (4) directing Work Capital's clients to make payments directly to AlphaOne.[25]

---

[24] DEL. CODE ANN. tit. 11, §§ 932-935 (2018).

[25] Am. Compl. ¶ 38.

Specifically, Work Capital alleges AlphaOne intentionally, knowingly and wrongfully prevented Work Capital from accessing certain electronically stored and generated information that belongs exclusively to Work Capital, including Work Capital's e-mail accounts, e-mail domain, and client information.[26] Work Capital seeks temporary and permanent injunctive relief, restitution, actual damages, damages for unjust enrichment, treble damages, and attorneys' fees under Section 941 of the Act.[27]

## LEGAL ANALYSIS

Upon a motion to dismiss, the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would

---

[26]  *Id.* ¶ 39.

[27]  *Id.* ¶ 41. Section 941 of the Act provides that "any person who suffers any injury to person, business or property may bring an action for damages against a person who is alleged to have violated any provision of §§ 932–938 of this title," regardless of whether the State has filed criminal charges against that person for the alleged computer crime. DEL. CODE ANN. tit. 11, § 941(c) (2018). Subsection (c) provides that an aggrieved person's action for damages may be brought "[i]ndependent of or in conjunction with an action under subsection (a) of this section," which subsection provides an aggrieved person with an additional private cause of action to seek injunctive relief, restitution, or the appointment of a receiver if the aggrieved person "has reason to believe that any other person has been engaged, is engaged or is about to engage in an alleged violation of any provision of §§ 932-938 of this title." *Id.* § 941(a), (c).

not be entitled to recover under any reasonably conceivable set of circumstances.[28] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[29]

AlphaOne first argues Work Capital's allegations are insufficient to state any claim under the Act. Specifically, AlphaOne argues that (1) Work Capital fails to state a claim under Section 932 of the Act because it has not asserted that AlphaOne accessed a computer system "knowing that [it] [was] not authorized to do so"; (2) Work Capital fails to state a claim under Section 933 of the Act for theft because it has not alleged that AlphaOne accessed any computer information "with the intent to obtain unauthorized computer services"; (3) Work Capital fails to state a claim under Section 934 of the Act because the alleged disruption of Work Capital's access to its computer services was not "without authorization"; and (4) Work Capital fails to provide factual support for the assertion that AlphaOne, as a result of accessing a computer system, caused any display, use, disclosure, copy, deletion, or any other form of misconduct as required under Section 935 of the Act.

---

[28] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[29] *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998).

The Court need not and should not here determine whether AlphaOne actually violated the Act. Work Capital's allegations concerning AlphaOne's computer-related offenses, if true, support a claim for relief under Sections 932, 933, 934 and 935 of the Act.[30]  For the present motion, the Court must accept all well-pleaded allegations as true. The Court must construe these allegations and the inferences to be drawn therefrom in the light most favorable to Work Capital.

Whether AlphaOne acted with the requisite intent under Sections 932 and 933 of the Act is a factual question that is inappropriate for resolution on a Rule 12(b)(6) motion to dismiss.  At this stage, it is sufficient that AlphaOne is alleged to have "wrongfully, illegally, willfully, maliciously, knowingly and/or recklessly" "accessed such accounts, records and data and made unauthorized use thereof."[31] Similarly, Work Capital also states a claim under Section 934 of the Act because "the determination of whether the defendant possessed authority to engage in the conduct at issue is a fact-specific inquiry."[32]  Finally, Work Capital also states a

---

[30]  *See* Am. Compl. ¶¶ 38-41.

[31]  Am. Compl. ¶ 58.

[32]  *Base Optics Inc. v. Liu*, 2015 WL 3491495, at *20 (Del. Ch. May 29, 2015); *see also State v. Boyd*, 2008 WL 726900, at *4–6 (Del. Com. Pl. Mar. 3, 2008) (denying the defendant's motion to dismiss a criminal charge under Section 935 arising from the defendant, a police officer, using the State's judicial information database to locate and contact a member of a jury

claim under Section 935 of the Act because it sufficiently alleges AlphaOne "used and/or disclosed this information and data for its benefit and to Work Capital's detriment."[33] The Court can reasonably infer that there may be a violation of Section 935 resulting from AlphaOne's "exercising exclusive dominion and control over Work Capital's internet domain name, email accounts and other computer records, attempting to convert Work Capital's bank accounts to its own use . . . and withholding confidential and valuable financial information from Work Capital."[34]

---

that had recently returned a civil verdict against the defendant, despite the defendant's argument that police officers are authorized users of that database by statute, because whether the defendant's specific use was authorized is an issue of fact for a jury to determine based on the statute's "exhaustive list of what are considered authorized and permissible uses" of the State's database).

[33] Am. Compl. ¶ 41; *see also* Am. Compl ¶¶ 38-40.

[34] Am. Compl. ¶ 38. Under Section 935, "A person is guilty of the computer crime of misuse of computer system information when:

(1) As a result of accessing or causing to be accessed a computer system, the person intentionally makes or causes to be made an unauthorized display, use, disclosure or copy, in any form, of data residing in, communicated by or produced by a computer system;

(2) That person intentionally or recklessly and without authorization:
   a. Alters, deletes, tampers with, damages, destroys or takes data intended for use by a computer system, whether residing within or external to a computer system; or
   b. Interrupts or adds data to data residing within a computer system;

(3) That person knowingly receives or retains data obtained in violation of paragraph (1) or (2) of this section; or

(4) That person uses or discloses any data which that person knows or believes was obtained in violation of paragraph (1) or (2) of this section."

Next, AlphaOne argues that Count IV should be dismissed "because it is bootstrapped to Work Capital's contract claims . . ."[35] Not so. As noted above, the breach-of-contract claims in Counts I and II assert that AlphaOne owed a duty to Work Capital residing in contract.[36] Count IV states a statutory claim under the Act. Unlike the breach-of-contract claims, Count IV's statutory tort claims arise out of duties imposed by statute and are thus independent of AlphaOne's contractual duties. Accordingly, the claims in Count IV are not improperly bootstrapped to Work Capital's contract claims.[37]

The requested relief in Count IV also is not duplicative of the relief requested in Counts I and II. Count I seeks compensatory damages that stem from AlphaOne's breach of Section 3(a) of the SLA. Count II seeks indemnification for the harm stemming from AlphaOne's breaches of the SLA. Count IV seeks statutory based remedies, such as statutorily-conferred injunctive relief, restitution damages and

---

[35] Def. AlphaOne's Ans. Br.in Opp. to Plf's Mot. for Prelim. Inj. And Op. Br. In Supp. of Mot. to Dism. at 1.

[36] Am. Compl. ¶ 26.

[37] *See Novipax Holdings LLC v. Sealed Air Corp.*, 2017 WL 5713307, at *14 (Del. Super. Nov. 28, 2017).

treble damages, and statutorily mandated attorneys' fees. Thus, Work Capital has adequately differentiated the relief in each Count.

## CONCLUSION

Accordingly, the Court **DENIES** AlphaOne's Motion to Dismiss Count IV of Work Capital's Amended Complaint.

**IT IS SO ORDERED.**

Paul R. Wallace, Judge

Original to Prothonotary,

cc: All Counsel via File and Serve